# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

DONNA LONG     PLAINTIFF

V.     NO. 3:04CV00194-JFF

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration     DEFENDANT

## MEMORANDUM AND OPINION

Plaintiff, Donna Long, appeals the final decision of the Commissioner denying her claim for Disability Income Benefits (DIB).

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996). Provided that substantial evidence supports the Commissioner's decision, this Court may not reverse even if the record also provides substantial evidence to support a contrary outcome. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).

It is well settled that the claimant has the burden of proving her disability by establishing a physical or mental impairment lasting at least twelve months that prevents her from engaging in any substantial gainful activity. *Ingram v. Chater,* 107 F.3d 598, 601 (8th Cir. 1997). The Social Security Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

On March 6, 2002 Plaintiff applied for DIB alleging she had been unable to work since January 15, 2002 due to fibromyalgia, polyneuropathy, spastic colon, headaches, and pain in her feet, ankles, and legs (Tr. 54-56, 86). An administrative hearing was held before an Administrative Law Judge (ALJ) on October 20, 2003 (Tr. 240-262). Plaintiff was 46 years old at the time of the hearing (Tr. 243). She completed the 9th grade and obtained her GED (Tr. 244). She has past work experience as a receptionist, clerk, pharmacy technician, and distribution center tagger, opener, and puller (Tr. 87).

The ALJ evaluated Plaintiff's claim according to the familiar five step sequential evaluation.[1] On January 9, 2004, he issued his decision that Plaintiff was not disabled (Tr.15-20). The ALJ found: (1) she had not engaged in substantial gainful activity since the alleged onset date; (2) the medical evidence established that she had severe sensory polyneuropathy, degenerative disc disease, and fibromyalgia, but that she did not meet the listings for presumptive disability; (3) her subjective allegations were not credible; (4) she retained the residual functional capacity (RFC) for a wide range of sedentary work; and (5) vocational expert (VE) testimony established that her past relevant work as a receptionist and clerk did not require the performance of work-related activities precluded by her RFC (Tr. 19). Therefore, the ALJ concluded Plaintiff was not disabled.

Plaintiff argues there is not substantial evidence to support the ALJ's decision because (1) the ALJ erred in assessing Plaintiff's RFC; (2) the ALJ erred in assessing Plaintiff's credibility;

---

[1] The five-step sequential evaluation asks: (1) Is the claimant currently working? (2) Does she have a severe impairment? (3) Does the impairment meet or equal a listing for presumptive disability? (4) Does the impairment prevent her from performing her past relevant work? (5) Does the impairment prevent her from doing any other work? 20 C.F.R. § 404.1520.

and (3) the ALJ's step four findings are not supported by substantial evidence (*Plaintiff's Appeal Brief,* 12-20).

First, Plaintiff argues there is not substantial evidence to support the ALJ's RFC determination. The ALJ found that Plaintiff retained the RFC for a wide range of sedentary work (Tr. 19). Contrary to Plaintiff's argument, a review of the record provides substantial evidence to support the this finding.

Plaintiff claims she has been unable to work since January 15, 2002. In May 2001, she was seen by neurologist Bruce Robbins M.D. (Tr. 147). Dr. Robbins reported that her nerve conduction studies showed evidence of possible early polyneuropathy, though she was better with Gabapentin. Her MRI of the lumbosacral spine showed some evidence of lateral recess stenosis, but not enough to justify an operation. She was scheduled for repeat nerve conduction studies for April of 2002 (Tr. 147), which apparently never occurred.

According to the record, Plaintiff was not evaluated by a doctor again until the SSA sent her for a consultative physical examination in June 2002 (Tr. 153-160). James Bradley, Jr., M.D., concluded that it was doubtful she would be able to do any physical or manually demanding tasks, based on her physical and history (Tr. 160). In her cervical spine, she had a forward flexion range of motion of 30 degrees where 40 is normal; 25 degrees of flexion where 30 is normal; her extension and rotation ranges of motion were normal (Tr. 156). In the lumbar spine, she had flexion/extension of 80 degrees where 90 is normal, and her lateral flexion was normal. It was noted that she had muscle spasm in the cervical and lumbar spine (Tr. 156).

Plaintiff was next seen in October 2002, in initial consultation with Ken Carpenter, M.D. (Tr. 175-177). Dr. Carpenter reported that she was taking Neurontin for polyneuropathy, which

3

helped with some of the symptoms, but she still had some pain. Her MRI showed degenerative disc disease and degenerative joint disease with broad-based bulging at L4-L5 with minimal narrowing of the lateral recesses and the neuroforamina. (Tr. 175). She had normal muscle strength and normal muscle tone throughout. Her deep tendon reflexes were 1+ throughout except the ankle jerks which were absent (Tr. 176).

In November 2002, Plaintiff was seen by Dr. Carpenter and reported quite a lot of pain in the feet from the neruopathy (Tr. 224). Her cranial nerve exam was unremarkable; she had normal muscle strength throughout; her coordination was normal, and her gait and station were unremarkable (Tr. 224). Dr. Carpenter increased her Neurontin and changed the Flexeril to Zanaflex.

After a review of the evidence, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff retains the RFC for a wide range of sedentary work.

Second, Plaintiff argues there is not substantial evidence to support the ALJ's credibility determination. Contrary to Plaintiff's argument, the ALJ properly evaluated her subjective complaints of pain in accordance with *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). In *Polaski*, the Court stated that when assessing credibility, an ALJ is required to examine all of the evidence and the claimant's prior work record, as well as the following factors: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions. *Id.* Plaintiff claims that her pain is so severe that she cannot work at all. However, she consistently reported that the reason she cannot work is because "it is hard for me to be up on my feet for any long period of time" (Tr. 64, 72, 248). Accordingly, the ALJ considered all the

evidence, and properly limited Plaintiff to working sedentary jobs.  Plaintiff also complains of stress headaches every day (Tr. 252), however, she reported to her doctor that her migraine headaches only occurred three times a year (Tr. 148).  In addition, although Plaintiff complains that her pain is disabling, her failure to seek medical attention is inconsistent with such complaints:  for example, Plaintiff saw her treating physician in May 2001 (Tr. 147), and, but for the SSA sending Plaintiff for a consultative exam in June 2002 (Tr. 153), she did not return to a doctor until October 2002 (Tr. 175). *See Benskin v. Bowen*, 830 F.2d 878 (8th Cir. 1987).  Plaintiff also testified that she left her pervious jobs either because she moved or was seeking a better paying job (Tr. 245-48, 259).  Importantly, Plaintiff testified that when she stopped working on January 15, 2002, she was still able to do work, because, the pharmacist let her sit down when her feet started hurting (Tr. 259).  The ALJ properly noted that it appeared that Plaintiff had not stopped working because of her alleged impairments (Tr. 18).  In conclusion, substantial evidence supports the ALJ's credibility determination.

Third, Plaintiff argues that because the ALJ erred in his RFC determination, his hypothetical question to the VE is not based on substantial evidence.  As the Court has already determined that the Plaintiff's RFC is supported by substantial evidence, Plaintiff's argument cannot stand.

It is not the task of this Court to review the evidence and make an independent decision.  Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.  The test is whether there substantial evidence in the record as a whole that supports the decision of the ALJ.  *E.g.*, *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).  The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's findings from being supported by substantial evidence. *Reed v. Sullivan,* 988 F.2d 812, 815 (8th Cir. 1993).

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and Plaintiff's Complaint is DISMISSED, WITH PREJUDICE.

DATED this 28th day of July, 2005.

_____
UNITED STATES MAGISTRATE JUDGE